IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICK TURRIETTA,

        Plaintiff,

vs.                                                No. CIV 01-680 JP/LFG

LAWRENCE BARRERAS, et al.,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983. Plaintiff Rick Turrietta ("Turrietta"), filed this action against Defendants Lawrence Barreras, Patricio Mejia, Gabriel Diaz, and one other Defendant who could not be served and was consequently dismissed from the case. Turrietta alleges that he was injured when the Defendants used excessive force in subduing him during a strip search at the Valencia County Detention Center ("VCDC") in October 2000, and that they thereafter failed to provide adequate medical care for his injuries, all in violation of his constitutional rights.

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

The Court ordered the remaining Defendants to submit a Martinez Report[2] on the incident alleged in Turrietta's complaint. The parties were notified that the Martinez Report could be used in deciding whether to grant summary judgment on Turrietta's claims. Defendants submitted the report [Doc. 33], and Turrietta filed five separate responses [Docs. 38, 39, 41, 42, and 46]. In addition, Turrietta filed a motion for an order directing that he take a lie detector test [Doc. 45].

The Martinez Report and Turrietta's response thereto reveal that he did not file a grievance, or otherwise avail himself of any administrative remedies, regarding the incident which forms the basis of this lawsuit. In light of this failure, therefore, recent Supreme Court rulings mandate that his suit be dismissed for failure to exhaust his administrative remedies.

**Factual Background**

Turrietta alleges in his complaint that, on October 11, 2000, he was subjected to unwarranted brutality during a strip search at VCDC. He claims that the incident triggered memories of childhood sexual abuse, and also that his jaw, which had been broken in an automobile accident approximately one year earlier, was further injured while he was being subdued on the floor during the strip search incident. He also asserts that he was denied adequate medical care following the incident, which has led to permanent injury to his jaw.

The Martinez Report contains several requests by Turrietta for medical treatment following the incident; however, the record indicates he did not file any grievances at all, either for the allegations of excessive force applied during the search incident, or for the alleged lack of medical treatment. Defendants have supplied the affidavit of Anthony Romero, associate warden at VCDC,

---

[2]The Court may order the defendant in a case brought by a prisoner *pro se* to submit a special report referred to as a Martinez Report. The report in an investigation of the incident which is the basis of the lawsuit. *See*, Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

2

who states that he personally reviewed Turrietta's inmate file from both VCDC and the Santa Fe County Detention Facility ("SFCDF") (both of these facilities are operated by Cornell Companies) and, based on that review and on his personal knowledge, concluded that Turrietta never filed a grievance or made any complaint regarding the incident of October 11, 2000 that forms the basis of this lawsuit. [Doc. 41, Ex. 17].

Romero states in his affidavit that, at all times during Turrietta's incarceration at VCDC and SFCDF, both facilities maintained inmate grievance/complaint policies, copies of which are attached to the affidavit. [Doc. 41, Ex. 17, Subexhibits C and D].

Both policies provide that inmates will be given ten days from the date of the incident to file a grievance, that the Grievance Officer will have five days thereafter to initiate and conduct an investigation, that the Administrative Supervisor will approve or deny the recommendation of the Grievance Officer within five days, and that the inmate will have five days thereafter to file an appeal with the Warden. The Warden or his designee then has seven days to provide a written response to the grievance, along with a final appeal decision. If the grievance is found in the inmate's favor, corrective remedies will be instituted, including change of current policies, procedures, or practices; change of custody, living unit, program, or work assignment; personnel action, reprimand, or apology; or "other remedies as deemed appropriate by the Associate Warden or Senior Warden." [Id.].

Provisions are included in the policies for emergency grievances, and the policies require that the facilities maintain grievance logs and produce monthly reports of all grievances filed. In addition, the policies require that all inmates have access to the grievance procedure regardless of any disciplinary or other classification, and that copies of the procedure be included in the initial intake

3

orientation packet of each inmate, and kept in the law library. [Id.]. In addition, the Cornell Corrections Adult Resident Handbook, which Romero states is given to each inmate, includes information on filing grievances. [Doc. 41, Ex. 17 and Subexhibit E].

Turrietta admits that he did not file a formal grievance, as discussed below, but argues that this failure should be excused.

## **Discussion**

The general rule in cases brought under 42 U.S.C. § 1983 is that the plaintiff is not required to exhaust administrative remedies before filing suit in court. Section 1983 suits brought by prisoners alleging constitutional deprivations while incarcerated once fell within this general rule. Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002).

However, Congress added an exhaustion requirement in 1980 for suits brought by state prisoners, allowing federal courts, in their discretion, to stay the prisoner's suit for up to 180 days to allow plaintiff to pursue "plain, speedy, and effective administrative remedies." 42 U.S.C. § 1997(e)(a)(1) (1994 ed.). Exhaustion would only be required if the state's prison grievance system was certified as meeting specified federal standards and if in addition the Court found that exhaustion in the particular case was "appropriate and in the interests of justice." §§ 1997e(a) and (b). Furthermore, the courts considered the exhaustion requirement inapplicable to prisoner suits for money damages when monetary relief was not available through the grievance system. McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081 (1992).

The Prison Litigation Reform Act of 1995 (PLRA"), Pub. L. No. 104-134, changed this scheme. The exhaustion provision was revised and now reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is now mandatory, and the remedies to be exhausted need only be "available"; there is no requirement that they meet federal standards, nor that they be "plain, speedy, and effective." Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001). In addition, even an inmate who seeks only money damages, and whose applicable prison grievance system does not provide monetary relief, must first exhaust administrative remedies before he can file suit. Id., at 734. "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id., at 741 n.6.

This year, the Supreme Court refined the Booth interpretation of § 1997e, holding that the expanded exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 122 S. Ct. at 992.[3] Prior to the Porter decision, the circuits were split on the issue of whether the exhaustion requirement applied to prisoner cases alleging a single episode or excessive force, the question being whether such episodes or incidents should be considered "prison conditions" as that phrase is used in the PLRA.

Noting that, in the PLRA, Congress "replaced the 'general rule of non-exhaustion' with a general rule of exhaustion," the Supreme Court pointed out that the exhaustion requirement provides benefits beyond merely weeding out frivolous suits:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address

---

[3]Turrietta's lawsuit was filed prior to the decision in Porter v. Nussle; however, that decision applies retroactively to this case. *See*, Bates v. Day, 28 Fed. Appx. 793, 795, 2001 WL 1356128, at *2 (10th Cir. Nov. 5, 2001), *quoting from* Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996).

5

> complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmates' grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation ... In other instances, the internal review might 'filter out some frivolous claims' ... And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter, 122 S. Ct. at 988.

In the present case, Defendants raised the exhaustion issue in their Martinez Report [Doc. 8, at 10], and Turrietta acknowledges that he failed to file a grievance. He states in his complaint that he wasn't given the chance to do the proper paperwork for a grievance. He says was told there was no paperwork to do and was also told by staff "not to make no dust so to speak." He states further that he couldn't file a grievance because he was moved around to different facilities. [Doc. 1, Ex. A, at ¶ 8; Doc. 41, at unnumbered p. 6]. Turrietta also attaches a letter from himself to Luisa Lucero, dated February 14, 2001, in which he writes that he could not file a grievance, because "they wouldn't give me one." [Doc. 41, unnumbered exhibit]. Turrietta says that he had a corrections officer sneak the letter out for him, since he couldn't get any cooperation from prison officials with regard to his mail, "much less get and do a grievance." [Doc. 41, at unnumbered p. 6].

To the extent that Turrietta argues that he should be excused from filing a grievance because it would have been futile, or even counterproductive, to do so (*i.e.*, he was told "not to make no dust so to speak"), that argument has been rejected by the Tenth Circuit. Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir. 2001). *See also*, Farrell v. Addison, 34 Fed. Appx. 650, 651-52, 2002 WL 568191, at *1 (10th Cir. Apr. 17, 2002):

> Farrell admits that he did not file a grievance with the prison's chief medical officer. But he argues that his duty was excused because any such effort would have been futile. The controlling statute, however,

> offers no grounds for a futility excuse, at least not in its text ... Furthermore, we are constrained in our ability to question whether the statute contains an implicit excuse, for we must look to Congress's intent in enacting § 1997e ... Here, Congress's intent is made clear by the specific and unqualified language of the statute, which mandates exhaustion in all suits "brought with respect to prison conditions." ... We cannot, in the face of such a clear directive, weigh the fairness of the exhaustion requirement or entertain exemptions from its reach [*citing* Porter v. Nussle, *supra*].

Turrietta did have a chance to present his version of the incident at a disciplinary hearing on charges that he refused to follow a lawful order of a staff member to submit to the strip search. [Doc. 41, Ex. 2]. However, this is not a substitute for pursuing a grievance through the established prison procedures. The disciplinary proceeding focused primarily on whether Turrietta was guilty of an infraction, whereas the focus of a grievance proceeding would be on the corrections officers' behavior. Turrietta was found guilty of the charge of refusing a lawful order [Id.], and he did not file an appeal of this ruling.

In a similar case involving a disciplinary hearing following an altercation between the inmate and guard, the Tenth Circuit held that the inmate's appeal of a negative ruling at the hearing did not suffice to constitute exhaustion of administrative remedies when he thereafter filed suit for excessive force, since the inmate failed to use and exhaust the Inmate/Offender Grievance Process established by the state prison system. Lowe v. Sockey, 36 Fed. Appx. 353, 359-60, 2002 WL 491731, at *5-6 (10th Cir. Apr. 2, 2002). In the present case, Turrietta did not even file an appeal after the disciplinary hearing. The fact that the incident received some attention and airing at the disciplinary hearing does not excuse Turrietta's failure to utilize the prison grievance procedures nor does it provide a substitute therefor for purposes of exhaustion.

Turrietta filled out a preprinted Complaint for his Section 1983 action, which includes a space

dealing with exhaustion of administrative remedies. The form complaint directs the plaintiff, if he asserts that he has exhausted his remedies, to "briefly explain the steps taken" and attach proof of exhaustion. Turrietta did not do so, instead stating only that he "tried everything possible." However, there is no evidence in the record of any requests for an investigation, or demands for any sort of redress arising from his alleged mistreatment on October 11, 2000 or for any lack of medical care following the incident.

Turrietta did file various requests for medical treatment following the incident, on October 13, 2000, October 16, 2000, October 30, 2000, November 3, 2000, November 9, 2000, February 19, 2001, and February 27, 2001 [Doc. 41, Ex. 5, 6, 7], and the record indicates that he received extensive medical treatment pursuant to these requests, and that he received psychological treatment as well. However, the treatment requests do not constitute even informal requests for an investigation of the October 11 incident. *See*, Boulden v. Tafoya, No. 02-2024, 2002 WL 1354204 (10th Cir. 2002) (formal grievance for denial of adequate medical care does not exhaust remedies with regard to claim of failure to protect); and Yousef, at 1221-22 (filing of an informal complaint does not satisfy the exhaustion requirement).

Finally, Turrietta alleges that he was not given the proper paperwork to file a grievance and was apparently told not to stir up trouble. Unless a prisoner is completely barred from filing a grievance, however, actions by prison authorities which have the effect of frustrating the inmate's efforts to file a grievance will not excuse a failure to exhaust. Yousef, at 1221-22 (Bureau of Prison's statement that it had no jurisdiction to review determinations made in the Administrative Remedy Program with regard to the overall legality of certain administrative measures may have misled plaintiff into thinking he had no remedy to pursue in his individual complaint, but this did not justify

his failure to exhaust). Turrietta seems to have had adequate access to paperwork for medical requests, and he was not reticent in demanding medical treatment.

It appears from the Martinez Report that Turrietta may have waited too long to file a grievance and that the administrative review process is no longer available to him. The Court will not make this determination, however, but will dismiss the case without prejudice, to give Turrietta an opportunity to pursue whatever remedies may be available to him. If he has indeed lost his chance for administrative review through his own default, his failure to exhaust is not thereby excused, and any further litigation based on this incident may well be dismissed with prejudice.

## **Recommended Disposition**

That this case be dismissed without prejudice for failure to exhaust administrative remedies, and that Turrietta's motion for an order directing that he take a lie detector test [Doc. 45] be denied as moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge